**RECEIVED**
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE _____ 5 , 29 , 07
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CLYDE DENNIS GLENN | CIVIL ACTION NO. 07-0178 |
| VS. | SECTION P |
| RICHARD STALDER | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

<u>REPORT AND RECOMMENDATION</u>

Clyde Dennis Glenn, Louisiana Department of Public Safety and Corrections (LDOC) Prisoner Number 111834, returns to court to attack the constitutionality of his continued imprisonment in Louisiana. Petitioner's present incarceration is the result of the revocation of his Louisiana "good time" parole; according to petitioner, his "good time" parole was revoked because he was convicted of a felony in Texas while on parole. He collaterally attacks the Texas conviction and seeks release from custody in Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

2

### *Statement of the Case*

**1. *Glenn v. Stalder,* No. *1:05-cv-1101*.**

Petitioner filed a petition for writ of *habeas corpus* in the United States District Court for the Western District of Texas on March 10, 2005. In his original petition he attacked his February 2003 conviction for burglary in Texas's Twenty-Seventh Judicial District Court, Lampasas County on the grounds that the evidence used against him at trial was seized pursuant to an unlawful arrest; ineffective assistance of trial counsel; failure to disclose favorable evidence; and, knowing use of perjured testimony. See Glenn v. Stalder, No. 1:05-cv-1101 [hereinafter Glenn I, at doc. 1.]

On March 23, 2005, United States Magistrate Judge Andrew W. Austin authored a Report recommending dismissal of the petition. In making this recommendation, the Magistrate Judge observed that petitioner's 20 year sentence had been reversed on appeal[1] and that on remand, the Texas District Court sentenced him to time served. Accordingly, the Magistrate Judge opined, "Petitioner is no longer in custody pursuant to the Lampasas County conviction. Instead, he is in a Louisiana prison serving time on a parole revocation. According to Petitioner, his Louisiana parole was revoked as a result of the Lampasas County Conviction." The

---

[1] See Glenn v. State of Texas, 2003 WL 22409453 (Tex. App. - Austin, October 23, 2003) (unpublished).

3

Magistrate Judge further observed, that since petitioner was no longer "in custody" under the Texas conviction, his "... direct challenge of his Lampasas County conviction is barred from federal habeas review." The Magistrate Judge concluded his Report and stated, "Petitioner is not serving a sentence imposed pursuant to the Lampasas County conviction. Therefore, he cannot bring a federal habeas petition directed solely at that charge." [Glenn I, at doc. 4]

On April 8, 2005 and April 18, 2005, petitioner filed an objection to the Report and Recommendation and an Amended Complaint both of which alleged that he was attacking the Texas conviction because that conviction was the sole grounds cited by the Louisiana Parole Board when they revoked his parole. [Glenn I, at docs. 5 & 6]

On May 25, 2005, United States District Judge Sam Sparks issued an order which noted, "Glenn is not confined in Texas. He also does not meet the 'in custody' requirement with respect to his Texas sentence. Construed liberally, however, his amended habeas petition may be construed as a challenge to his Louisiana parole revocation ... Rather than dismiss his petition for lack of jurisdiction, the Court finds it would be in the interest of justice to transfer this action to the District Court for the Western District of Louisiana – the court with jurisdiction over the place of Glenn's conviction as well as his confinement."

4

[Glenn I, doc. 7]

Glenn's *habeas* petition was transferred in accordance with
Judge Sparks's order.  On July 19 and 22, 2005 petitioner filed
an "Motion to Amend" and an "Amended Petition for Habeas Corpus"
in this court raising the following claims: (1) "The [Louisiana
Department of Public Safety and Corrections] violated Glenn's
rights to liberty and due process placing him on parole without
authority ..." (2) "The [Louisiana Parole] Board violated Glenn's
right to liberty and due process by failing to institute and/or
complete the parole revocaton process prior to the expiration of
parole..." (3) "The [Louisiana] D.O.C. is violating Glenn's due
process and liberty rights by denying him credit for any and all
time served when that incarceration was based solely on the
warrants issued by the Board, and denying him credit for the 20
months served in Texas  that that Court awarded him pursuant to
15:574.10." (4) "The [Louisiana] D.O.C. violated Glenn's right to
due process by failing to serve notice of their 'forfeiture
intent' and/or provide a hearing, and is currently denying him
liberty by incarcerating him beyond the 180 day maximum provided
by law." and, (5) "The [Louisiana] D.O.C. is denying Glenn a
statutory right to parole consideration ..."  Petitioner further
alleged that while he had exhausted administrative remedies
available through the Louisiana Department of Public Safety and
Corrections, he had not exhausted available state court remedies

5

because "[t]he state habeas corpus process is ineffective and an excessive delay..."  [Glenn I, docs. 8 and 10]

On September 1, 2005 the undersigned authored a Report recommending dismissal of the *habeas corpus* petition because of petitioner's failure to exhaust available State court remedies. [Glenn I, doc. 11]

On September 13 and 15, 2005 petitioner submitted objections to the Report and Recommendation. Petitioner claimed exhaustion of state court remedies should be excused because exhaustion is either unavailable or, is futile. [Glenn I, docs. 12 and 13]

On November 10, 2005 United States District Judge F.A. Little, Jr. accepted the Report and dismissed petitioner's habeas petition without prejudice. [Glenn I, doc. 14-1, p.1] On November 16 and 21 petitioner filed Motions for Reconsideration [Glen I, docs. 15 and 17] which were denied on November 22, 2005.

Petitioner did not appeal the denial of his petition for *habeas corpus*.

## 2. *Glenn v. Stalder, No. 1:05-cv-2237*

On December 29, 2005 petitioner filed a petition for writ of *habeas corpus* in this court under docket number 1:05-cv-2237. [Hereinafter Glenn II] In his petition, Glenn acknowledged that he was attacking the February 2003 Lampasas County conviction for Burglary. Petitioner raised the following claims for relief: (1) Conviction obtained by evidence obtained pursuant to unlawful

6

arrest; and, (2) Ineffective assistance of counsel. [Glenn II, doc. 1]

On March 27, 2006, the undersigned authored a Report recommending dismissal of the *habeas* petition because petitioner admitted that he had not exhausted Louisiana State court remedies with respect to revocation of his parole. [Glenn II, doc. 4] Glenn timely objected to the Report and Recommendation [Glenn II, doc. 5] and on April 18, 2006, United States District Judge Dee D. Drell rejected the March 27 Report and its recommendation and directed the undersigned to re-consider petitioner's *habeas* claims. [Glenn II, doc. 6]

On August 9, 2006, the undersigned authored a second Report, which recommended transfer of the petition to the United States District Court for the Western District of Texas. [Glenn II, doc. 7] Notwithstanding petitioner's timely objections [Glenn II, doc. 8], Judge Drell accepted the Report and Recommendation and on August 30, 2006 ordered the matter transferred to the United States District Court in Texas. [Glenn II, doc. 9]

**3. *Glenn v. Stalder*, No. 1:06-cv-00697 (W.D.Tex.) AND No.1:07-cv-0178 (W.D. La.)**

In due course the matter was transferred to the United States District Court for the Western District of Texas where it was assigned that court's Docket Number 1:06-cv-00697. [Glenn III] On September 12, 2006, United States Magistrate Judge Andrew W. Austin ordered Service of Process on the respondent through

7

the Office of the Texas Attorney General, Post-conviction
Litigation Division. [Glenn III, doc. 13]

On December 11, 2006, the Texas Attorney General filed a
Motion to Dismiss for Want of Subject Matter Jurisdiction.
Respondent also submitted a copy of the Texas State Court
records. The Texas Attorney General also provided three
alternative arguments in support of the Motion to Dismiss and a
final argument suggesting that the matter be transferred back to
this court for further proceedings. [Glenn III, doc. 22-1; 1:07-
cv-0178, doc. 13]

On January 19, 2007, United States District Judge Sam Sparks
made the following observations: "Even though Petitioner
repeatedly stated his present habeas application does not attack
the Louisiana sentence for which he remains in custody, he states
in his response to Respondent's Motion to Dismiss: 'In the
instant petition Glenn challenges the constitutionality of the
Texas conviction because (1) it was the sole reason for his
parole revocation; (2) the sole reason for automatic forfeiture
of over 9 years goodtime [sic] credits; (3) is currently being
used by Louisiana Department of Corrections to deny eligibility
and risk review; and (4) if reversed, would mandate release
pursuant to LSA R.S. 15:574.10.' This statement, even if
Petitioner does not understand its full meaning, makes it clear
that Petitioner's application could be construed as asserting a

8

challenge to the revocation of his Louisiana parole, the sentence
he presently serves." [Glenn III, doc. 26, p. 5; 1:07-cv-0178,
doc. 17, p. 5] Based on that observation, Judge Sparks concluded
that this court, and only this court, has jurisdiction over
petitioner's application. Accordingly, Judge Sparks returned the
petition to this court and dismissed the Respondent's Motion to
Dismiss as moot. [id.]

### Law and Analysis

Based upon the foregoing, the undersigned is obliged to
conclude that petitioner now attacks the constitutionality of his
Texas conviction; petitioner claims that notwithstanding the fact
that the Texas conviction's sentence has been fully discharged,
he meets the "in custody" requirement of 28 U.S.C. §2254 because
the Louisiana sentence he is now serving was adversely affected
by the allegedly unconstitutional Texas conviction.

### 1. Daniels and Coss Revisited

As noted in the previous Report recommending transfer, "A
petitioner meets the jurisdictional 'in custody' requirement if
the habeas petition could be construed as asserting a challenge
to the sentence presently being served as enhanced by the prior
conviction, for which the petitioner is no longer in custody. See
Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 401-02
(2001). '[I]n custody' does not necessarily mean 'in custody for
the offense being attacked.' Instead, jurisdiction exists if

9

there is a positive, demonstrable relationship between the prior

conviction and the petitioner's present incarceration.' <u>Sinclair</u>

<u>v. Blackburn</u>, 599 F.2d 673, 676 (5th Cir. 1979)(citation

omitted)." <u>Williams v. Dretke</u>, 2006 WL 707135 (5th Cir.

3/21/2006)(unpublished).[2]

When confronted by petitioner's first petition for *habeas*

*corpus*, Judge Sparks framed the issue as follows: "The more

difficult question in this case is whether there are special

circumstances here that would permit a federal court to review

the constitutionality of the Texas judgment in a *habeas* challenge

to Glenn's Louisiana parole revocation. The Court declines to

speculate on this question, however, for jurisdictional reasons.

Since Glenn is no longer 'in custody' pursuant to his Texas

conviction, he may only challenge that conviction, if at all, in

a habeas proceeding in Louisiana, where he is in custody." See

<u>Glenn v. Stalder</u>, 1:05-cv-1101 at doc. 7.

The Supreme Court's decision in <u>Lackawanna County Dist.</u>

<u>Attorney v. Coss</u>, 532 U.S. 394, 121 S.Ct. 1567, 149 L.Ed.2d 608

(2001), provides the appropriate method of analysis for the

---

[2] In <u>Williams</u>, the petitioner filed a §2254 *habeas* petition which challenged a guilty-plea conviction of possession of cocaine for which petitioner had received a sentence of only 180 days. The United States District Court for the Southern District of Texas dismissed the *habeas* petition because petitioner's sentence expired before he filed his federal petition. In petitioner's request for a Certificate of Appealability he argued that as a result of the cocaine conviction, his parole had been revoked and therefore, "...he is in custody based on his conviction for possession of cocaine because this conviction was the sole reason used by the Parole Board to revoke his 1986 parole." <u>Williams</u>, *supra* at *1.

10

instant *habeas corpus* petition.

In Coss, the *habeas corpus* petitioner had been convicted of various criminal offenses in 1986. In 1990, after petitioner had completed the sentences imposed for the 1986 convictions, petitioner was convicted of aggravated assault. The trial court imposed an enhanced sentence based on petitioner's extensive criminal record, including the 1986 convictions. The petitioner filed a petition for writ of *habeas corpus* in federal court attacking the 1986 convictions on grounds that his trial counsel was ineffective. The United States District Court held that it could exercise *habeas* jurisdiction because the 1986 convictions were relied upon by the trial court when it imposed an enhanced sentence. Nevertheless, the District Court declined to grant relief by finding that petitioner had not established that his trial counsel was ineffective. The Third Circuit agreed with the trial court on the jurisdictional issue but reversed on the merits. The District Attorney applied for *certiorari* seeking review of the jurisdictional issue.

The United States Supreme Court reversed and held that <u>once a state conviction is no longer open to direct or collateral attack in its own right, because the defendant failed to pursue those remedies while they were available or because the defendant did so unsuccessfully, the conviction may be regarded as conclusively valid</u>. Coss, 532 U.S. at 403-04, 121 S.Ct. at 1574

11

(emphasis supplied)

Here, petitioner has unsuccessfully pursued the remedies afforded by Texas law, having twice filed for a writ of *habeas corpus* in both the Texas District Court and in the Texas Court of Criminal Appeals.

In the Report recommending transfer, the undersigned presumed that petitioner could still pursue the remedy provided by 28 U.S.C. §2254. This presumption was based on the following language from <u>Coss</u>, 532 U.S. at 402-406, 121 S.Ct. 1573-75:

> Once a judgment of conviction is entered in state court, it is subject to review in multiple forums. Specifically, each State has created mechanisms for both direct appeal and state postconviction review [citation omitted] even though there is no constitutional mandate that they do so [citations omitted]. Moreover, §2254 makes federal courts available to review state criminal proceedings for compliance with federal constitutional mandates ...

> Accordingly ... we hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid [citation omitted]. If that conviction is used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under §2254 on the ground that the prior conviction was unconstitutionally obtained.

> The general rule we have adopted here ... reflects the notion that a defendant properly bears the consequences of either forgoing otherwise available review of a conviction or failing to successfully demonstrate constitutional error. [citations omitted] <u>It is not always the case, however, that a defendant can be faulted for failing to obtain timely review of a constitutional claim...</u>

> In such situations, a habeas petition directed at the
> enhanced sentence may effectively be the first and only
> forum available for review of the prior conviction...
>
> Whatever such a petitioner must show to be eligible for
> review, the challenged prior conviction must have
> adversely affected the sentence that is the subject of
> the habeas petition. (emphasis supplied)

As noted above, the undersigned concluded that since petitioner had been successful in attacking his original Texas _sentence_ on direct appeal, the reduced sentence imposed following his appeal expired well before petitioner was able to attack his Texas conviction in a _federal_ petition for writ of _habeas corpus._ The undersigned, again citing Coss, further observed, that petitioner should not be "...faulted for failing to obtain timely review of a constitutional claim..."

This conclusion was called into question by the respondent Texas Attorney General in his Motion to Dismiss filed on December 11, 2006. [Glenn III, doc. 22-1, pp. 6-8; 1:07-cv-0178 at doc. 13, pp. 6-8] In that motion, respondents argued that, to the extent that petitioner was attacking the Louisiana sentence, he could not attack the constitutionality of the Texas conviction through the process afforded by 28 U.S.C. §2254. In support of this argument respondents cited Supreme Court jurisprudence for the proposition,

> Generally, a defendant has no constitutional right to
> collaterally attack the validity of a previous state
> conviction used to enhance a sentence in a Section 2254
> petition... An exception to the general rule occurs if
> the defendant, through no fault of his own, fails to

> obtain constitutional review of his previous state
> conviction during the time it was open to such
> review...
>
> In ... these cases, the Court reiterated that state
> court convictions relied upon in federal or state
> proceedings could not be challenged anew simply because
> they were later used to enhance a subsequent sentence.
> [Glenn III, doc. 22-1, pp. 6-7; 1:07-cv-0178, pp. 6-7]

Respondent then noted that in Daniels v. United States, 532 U.S.

374, 381 (2001) the Supreme Court identified three avenues

available to convicts wishing to challenge the constitutionality

of their convictions - direct appeal, state post-conviction

proceedings, and, federal *habeas corpus* review pursuant to §2254.

According to respondents,

> ...the Court did not stress that any one avenue was
> more important than the other, nor did it suggest that
> all three available avenues had to be exhausted before
> it could be said that the state conviction was
> adequately reviewed. The import here is that there be
> some review, not that it necessarily be federal
> review...
>
> The Louisiana court interpreted this language to mean
> that because Glenn was unable to challenge his Texas
> conviction via federal habeas review, his first and
> only opportunity to do so was via the instant petition.
> But this interpretation ignores the fact that, although
> he was unsuccessful in showing a constitutional
> violation, Glenn nevertheless obtained both direct and
> collateral review of his constitutional claims. Far
> from being his first and only opportunity to complain,
> the instant petition is actually his third bite at the
> apple. Thus, the fact that his sentence discharged
> before he could file his third review via a federal
> habeas petition is of no consequence. Custis, Daniels,

14

> and Coss[3] are merely concerned with whether the state
> conviction is sufficiently presumptively valid to
> assure that the defendant is not deprived of due
> process when a sentencing court subsequently relies on
> it. [Glenn III, doc. 22-1, pp. 7-8; 1:07-cv-0178, doc.
> 13, pp. 7-8]

Respondent is correct in these observations and conclusions.

To summarize the argument, once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under §2254 on the ground that the prior conviction was unconstitutionally obtained. Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 404-05, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (internal citation omitted); see also Daniels v. United States, 532 U.S. 374, 381, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001) (holding that, under 28 U.S.C. § 2255, a petitioner may not challenge a prior conviction used to enhance a federal sentence if the prior conviction "is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because

---

[3] Custis v. United States, 511 U.S. 485 (1994); Daniels v. United States, 532 U.S. 374, 381 (2001); Lackawanna County District Attorney v. Coss, 532 U.S. 394 (2001).

15

the defendant did so unsuccessfully)").

The Court has recognized only two narrow exceptions to this general rule: (1) when there was a failure to appoint counsel in the prior proceeding (a violation of the Sixth Amendment right to counsel pursuant to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); and (2) when a defendant cannot "be faulted for failing to obtain timely review of a constitutional claim." Lackawanna, 532 U.S. at 405, 121 S.Ct. 1567. Petitioner has failed to establish that either exception is applicable here.

Clearly petitioner does not allege that he was without counsel in the prior proceeding. To the contrary, in his original petition [1:07-cv-0178 at doc. 1, paragraph 12(b)] he alleged that during the course of the burglary prosecution in Lampasas, he "was represented by three different attorneys..." According to petitioner, he fired his first attorney when the attorney failed to file a motion to suppress, interview witnesses, or otherwise prepare for trial. He fired the second for the same reason, but this second attorney was permitted to assist petitioner and a third attorney in the trial. [id.]

As to the second exception, as previously noted, the Supreme Court has indicated that it may apply when "a state court [has], without justification, refused to rule on a constitutional claim that has been properly presented to it" and when, "after the time for direct or collateral review has expired, a defendant

16

[obtains] compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." Lackawanna, 532 U.S. at 405, 121 S.Ct. 1567.

Those circumstances are not present here. There is no indication that the state court refused to rule on a properly presented constitutional claim[4] or that petitioner has uncovered evidence demonstrating actual innocence.[5]

Initially, the undersigned was of the opinion that petitioner was not at fault for failing to obtain timely review of the constitutional claims arising from his Texas conviction. However, that opinion failed to take into consideration facts unknown at the time that the original Report was authored.

In conjunction with the filing of the Motion to Dismiss the respondent provided a record of the Texas State court proceedings. Among other things, the respondent recited the following un-refuted statement of facts based upon those records:

---

[4] According to the Texas record, petitioner filed his first state habeas corpus petition on February 2, 2004 while he was awaiting re-sentencing following the remand by the appellate court. That petition was dismissed because petitioner failed to comply with procedural rules. He was permitted to file a second habeas petition in August 2004, and, even though he was no longer in custody, the Texas district court judge ruled on the merits of each of his constitutional claims. [Glenn III at doc. 22-1, p. 3; 1:07-cv-0178 at doc. 13, p. 3]

[5] Petitioner has never claimed actual innocence. Indeed, petitioner, in his statement of claims, admits that when he was arrested he was driving a stolen mini-van and was in constructive possession of three sets of keys stolen from the burglarized used-car lot in Lampasas. [1:07-cv-0178 at doc. 1-1, pp. 4-5]

Glenn timely appealed his conviction to the Texas Third
Court of Appeals, where his court-appointed attorney
filed an *Anders* [Anders v. California, 386 U.S. 738
(1967)] brief, contending he could find no meritorious
grounds on which to base an appeal. Glenn v. State, No.
03-03-00212-CR, slip op. at n. 1 (Tex. App.– Austin
Oct. 23, 2003). Glenn filed a pro se brief raising a
single ground of sentencing error. *Id*. On October 23,
2003, the intermediate court of appeals sustained
Glenn's sentencing complaint, reversed Glenn's sentence
and remanded the case to the trial court with
instructions to sentence Glenn within the punishment
range of a state jail felony. *Id*.

Upon returning to the trial court, Glenn accepted the
state's plea-bargain offer of twenty months in prison
on February 6, 2004, and received credit for the twenty
months he spent in jail, which effectively discharged
his sentence. Ex parte Glenn, Appl. No. 12,783-05 at
19, 26. Glenn did not appeal this sentence. According
to Glenn, on March 11, 2004, Glenn's Louisiana parole
was revoked and he was returned to Louisiana custody.
*Id*. at 14-16.

On February 2, 2004, while awaiting resentencing in
Texas, Glenn attempted to file a state application for
writ of habeas corpus in the Texas courts complaining
of errors occurring during the guilt/innocence portion
of his trial. Ex parte Glenn, Appl. No. 12,783-04
(Event Date 4/12/2004, Supp. CR) at 2. This application
was eventually dismissed, however, on June 23, 2004 as
noncompliant with Texas Rule of Appellate Procedure
73.1. Ex parte Glenn, Appl. No. 12,783-04 (Event Date
3/24/2004, Writ Received) at cover.

On August 21, 2004, Glenn filed a second state
application for writ of *habeas corpus* in the Texas
courts, Ex parte Glenn, 12,783-05 at 1, informing them
that although he was no longer in Texas custody, his
Louisiana parole revocation was based on the Texas
conviction. *Id*. at 14-17. Glenn alleged four errors
allegedly occurring during the guilt/innocence portion
of his trial: 1) he was convicted with evidence
obtained from an illegal arrest; 2) he received
ineffective assistance of counsel at trial; 3) the
state withheld favorable *Brady* evidence; and 4) the
state used perjured testimony to convict him. *Id*. at 6-
7. The state habeas judge, who was also the trial

judge, noted that Glenn was no longer in custody on the
Texas conviction, but nevertheless considered all four
claims, [The state habeas judge found that the
ineffective assistance of counsel claim was without
merit; the evidence used against Glenn was legally
obtained and this claim was procedurally barred from
review because he failed to raise it in his direct
appeal; the evidence Glenn alleged was not disclosed
was presented at trial; and there was no evidence of
perjury. Ex parte Glenn, Appl. No. 12,783-05 at 26.]
and recommended that the Court of Criminal Appeals deny
relief. Id. at 26-27. The Texas Court of Criminal
Appeals denied habeas relief without written order on
findings of the trial court on February 9, 2005. Id. at
cover. [Glenn III at doc. 22-1, pp. 2-3; see also this
court's record, 1:07-cv-0178 at doc. 13, pp. 2-3]

Petitioner has raised two claims for relief – a Fourth Amendment
claim in which he asserts that the evidence used to convict him
should have been suppressed as the fruits of an illegal arrest,
search, and seizure, and, a Sixth Amendment claim in which he
asserts ineffective assistance of counsel based on counsel's
failure to obtain a continuance of the trial in order to locate
missing witnesses and her failure to request a jury charge
concerning the weight and admissibility of evidence. [1:07-cv-
0178, doc. 1-1] Petitioner was allowed to submit a *pro se* appeal
brief; he could have argued these claims on direct appeal, but he
neglected to do so.[6] He filed a *habeas corpus* petition in the

---

[6] Indeed, in his original petition, Glenn v. Warden, No. 1:05-cv-1101,
at doc. 1-1, p. 8, petitioner admitted, that with respect to his Fourth
Amendment claim, "The second attorney, Frank A. Holbrook, was dismissed as
lead counsel ... and Glenn was forced to draft and pursue the motion [to
suppress] pro se. The motion was granted in part, excluding some damaging
evidence and the issue (illegal arrest) reserved for appeal..." Petitioner was
thus aware of both his ineffective assistance of counsel claims and his Fourth
Amendment claims at the time he filed his *pro se* appeals brief.

Texas court in February 2004 but he failed to comply with procedural rules and therefore his petition was dismissed. Finally, he filed and did obtain merits review of his constitutional claims in the second *habeas* petition he filed in the District Court and Court of Appeals. In short, petitioner ultimately obtained review of his constitutional claims in the Texas Courts.

The fact that he did not receive federal habeas review of his constitutional claims is of no moment. As noted by the respondent,

> Significantly, the Court [Daniels v. United States, 532 U.S. at 381] did not stress that any one avenue [review on direct appeal, state post-conviction review, or federal habeas corpus review] was more important than the other, nor did it suggest that all three available avenues had to be exhausted before it could be said that the state conviction was adequately reviewed. The import here is that there be some review, not that it necessarily be federal review...

> The Louisiana court interpreted [Coss] to mean that because Glenn was unable to challenge his Texas conviction via federal habeas review, his first and only opportunity to do so was via the instant [federal habeas corpus] petition. But this interpretation ignores the fact that, although he was unsuccessful in showing a constitutional violation, Glenn nevertheless obtained both direct and collateral review of his constitutional claims... Thus, the fact that his sentence discharged before he could file his third review via a federal habeas petition is of no consequence. [Glenn III at doc. 22-1, pp. 7-8; 1:07-cv-0178 at doc. 13, pp. 7-8]

Furthermore, petitioner's failure to obtain federal habeas corpus review may fairly be attributed to his own choice.

20

Petitioner freely chose to enter into a sentence agreement following remand on direct appeal. That agreement resulted in his sentence being reduced to time-served. There is no reason to believe that petitioner was unable to reject that agreement to permit further litigation of his constitutional claims. Further, nothing suggests that petitioner was unaware of the collateral consequences of the Texas conviction and its effect on his Louisiana parole status when he opted for the reduction in sentence offered by the Texas authorities.

Petitioner's Texas conviction is no longer open to direct attack in its own right because the petitioner failed to properly pursue appellate remedies by raising his federal claims while they were available.  The Texas conviction is also no longer open to collateral attack in its own right because the defendant was afforded that right and his efforts proved unsuccessful; in the alternative, the Texas conviction is no longer open to collateral attack because petitioner freely chose a reduction in sentence rather than further collateral attack.

In other words, since petitioner had the opportunity to challenge the Texas conviction on direct appeal and collateral review, he may not advance another challenge here. See Coss, 532 U.S. at 406 (indicating that a petitioner may be able to challenge under §2254 if the §2254 proceeding is "the first and only forum available for review of the prior conviction").

21

The Texas conviction must now be regarded as conclusively valid. That being the case, petitioner may not now challenge the revocation of his Louisiana parole through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained. <u>Coss</u>, 532 U.S. 394, 404-05, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001).

### 2. *<u>Stone v. Powell</u>* and *<u>Strickland v. Washington</u>* Considerations

Even if petitioner were permitted to pursue this collateral attack on the Texas conviction, his claims would fare no better. Petitioner's first claim for relief is based on the assertion that "... testimony of the arrest, possession of the van and keys, and a video of the arrest should have been suppressed ... and not presented at the jury trial..." Such claims are normally barred in federal *habeas corpus* proceedings. In <u>Stone v. Powell</u>, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." *Id.* at 494 (footnote omitted); see also <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir.2002). The <u>Stone</u> bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous. <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324 (5th Cir.1978). An "opportunity for full and

22

fair litigation" means just that: an opportunity. If the state provides the process whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, Stone v. Powell bars federal *habeas corpus* consideration of that claim whether or not the defendant employs those processes. Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir.1978). Petitioner's factual allegations are somewhat confusing. He argues that the evidence in question "should have been suppressed by the trial judge." He also argues that he "was forced to draft and initially pursue the suppression motion pro se ..." and that it "... was heard on two separate days..." and then it was "continued." [1:07-cv-0178, doc. 1-1, pp. 5-6] Thus, petitioner was either afforded a suppression hearing, or, he was at the very least afforded the opportunity for a suppression hearing. Either way, his Fourth Amendment claim is not cognizable on federal *habeas* review.

Petitioner's second claim for relief involves an allegation of ineffective assistance of counsel. That claim, too, is somewhat convoluted. Petitioner argues that his trial attorney should have delayed the trial in order to have more time "... to prepare [and] locate missing witnesses [and] to interview[ ] witnesses; and confirm [petitioner's] sole defense..." He also claims that his attorneys were ineffective when they failed to request a special jury charge "... concerning their obligation not to consider any evidence ... obtained pursuant to an illegal

23

arrest..." [1:07-cv-0178, doc. 1-1, p. 7]

To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984). If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. Tucker v. Johnson, 115 F.3d 276, 281 (5th Cir.1997). Furthermore, the parts of the test need not be analyzed in any particular order. Goodwin v. Johnson, 132 F.3d 162, 172 n. 6 (5th Cir.1997). In addition, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042-43 (5th Cir.1998).

In his first petition for *habeas corpus* petitioner expanded on his argument concerning ineffective assistance of counsel. According to the petition,

> Had Ms. Harrell, or Mr. Holbrook delayed the trial they would have been able to locate the owner of Auto Mart, Jeff Cockburn, and verified Glenn's defense – the state offered testimony of Norris Roberts, co-owner, that Glenn admitted in a conversation with him (Roberts) that Glenn broke into Auto Mart. He lied. There was a conversation at Auto Mart where Glenn told Mr. Cockburn that he was the person arrested in the stolen van in Burnet, and he would make restitution, but he was so drunk that night he does not know where he got the van. Mrs. Harrell had an investigator look for Mr. Cockburn, but could not find him in the time span set by the Court. During the jury's deliberation, they asked for and received a reading of Mr. Robert's testimony

24

> concerning the admission and convicted him within
> minutes after returning to deliberate. Mrs. Harrell
> should have subpoenaed Mr. Cockburn or 'John Doe
> Salesman' who was also present but not part of the
> conversation with Mr. Cockburn. Or, at least
> interviewed them to uncover the facts and present a
> defenses. [1:05-cv-1101, doc. 1-1, pp. 9-10]

Petitioner was arrested and found to be in possession of a stolen automobile and various keys which had apparently been inside the used-car dealership where the vehicle was stored. His sole defense appears to be that he did not admit to breaking into the dealership; however, he did admit to being so intoxicated that he could not recall how he came to be in possession of the stolen property. It is inconceivable that this latter story, if believed by the jury, would have resulted in a verdict favorable to the petitioner.

Further, by his own admission, his trial counsel attempted to locate petitioner's witness but was unsuccessful. Her failure to move for a continuance cannot be construed as deficient performance; and, even if it was deficient, petitioner has not demonstrated prejudice – as shown above, it is inconceivable that petitioner's version of the events would have resulted in a favorable verdict.

Likewise, counsel's failure to request the jury charge on illegally obtained evidence establishes neither deficient performance nor prejudice. Petitioner's statement of the facts of his arrest fail to establish that the arrest and subsequent

25

search and seizure were illegal in the first place.

In short, even if petitioner were allowed to proceed on his claim of ineffective assistance of counsel, the claim would surely be insufficient to warrant *habeas corpus* relief.

### 3. Harmless Error

Finally, even if petitioner were allowed to litigate his collateral attack on the Texas conviction; and, even if his collateral attack proved successful, he would not thereby necessarily be entitled to be released from the custody of the State of Louisiana.

As noted earlier, petitioner had been released from the custody of the Louisiana Department of Public Safety and Corrections on "good time" parole.[7]  He claims that the allegedly unconstitutional Texas conviction was the sole cause for the revocation of his parole and his current incarceration.  However, even had petitioner's conviction been overturned as a result of the alleged constitutional violations, Louisiana's Parole Board was still authorized to revoke his parole.

Petitioner asserts that his parole was revoked pursuant to the provisions of La. R.S.15:574.10. Under the provisions of that statute, <u>parole shall be revoked when the parolee is convicted of</u>

---

[7] See La. R.S.15:571.3 which provides that certain Louisiana prisoners are entitled to earn "good time" or diminution of sentence at a specified rate based upon their good behavior in prison.  R.S.15:571.5 provides that prisoners released because of the diminution of their sentences "...shall be released as if released on parole."

a felony in this or any other jurisdiction. However, under the provisions of La. R.S.15:574.9, the Parole Board may revoke the parole of a parolee "... upon a determination that [t]he parolee has failed ... to comply with a condition of his parole; and, [t]he violation ... involves the commission of another felony, or misconduct including a substantial risk that the parolee will commit another felony, or misconduct indicating that the parolee is unwilling to comply with proper conditions of parole..."

Thus, under Louisiana law, both probation or parole may be revoked upon sufficient proof of criminal conduct without the need for establishing a conviction. See State of Louisiana v. O'Conner, 312 So.2d 645 (La. 1975); State v. Harris, 312 So.2d 643 (La.1975). In other words, even if petitioner was successful in having the Texas conviction overturned, there is ample evidence, including the allegations made in the various petitions, along with petitioner's affidavit [see 1:05-1101 at doc. 1-1] that petitioner was in violation of the terms of his parole and therefore, there is no reason to believe that his parole would not have been revoked based upon the criminal conduct he admitted to in these and other proceedings.[8]

ACCORDINGLY,

---

[8] By his own admission [1:05-cv-1101, doc. 1-1, p. 11] petitioner was arrested driving a stolen van, but he was so intoxicated that he could not explain or remember how he came to be in possession of the property. Given that admission, it is unlikely that the Louisiana Parole Board would have continued petitioner's parole status.

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, Douglass v. United Services Automobile Association**, 79 F.3d 1415 **(5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _____ day of _____, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE